IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SABINA BURTON,

                              Plaintiff,

        v.

BOARD OF REGENTS OF THE UNIVERSITY                              OPINION & ORDER
OF WISCONSIN SYSTEM,
THOMAS CAYWOOD, ELIZABETH THROOP, and                              14-cv-274-jdp
MICHAEL DALECKI,

                              Defendants.

---

Plaintiff Sabina Burton brought this suit to challenge what she perceived to be discrimination and retaliation from colleagues and administrators at the University of Wisconsin—Platteville (UWP), where Burton is a tenured professor. Eight months into the case, Burton fired her counsel. Dkt. 12. She found new counsel, who vigorously litigated this case through discovery and dispositive motions.

I granted defendants' motion for summary judgment after concluding that Burton would not be able to prove critical elements of her claims at trial. Dkt. 90. In the wake of that ruling, Burton insisted on a course of action that her counsel would not follow. Dkt. 96, ¶ 2. I granted counsel's motion to withdraw. Dkt. 97.

Burton has now filed a pro se motion for reconsideration of my summary judgment decision. Dkt. 99. She contends that her former counsel did not allow her to proofread or edit the brief in opposition to defendants' motion for summary judgment, and that, as a result, counsel failed to dispute facts that Burton instructed them to dispute with evidence that she provided. Dkt. 100, ¶ 2. Burton has assembled this evidence and filed corrections and updates to several documents that her former counsel submitted in opposition to

summary judgment. *See* Dkt. 98; Dkt. 100; Dkt. 101; Dkt. 102. Through these filings, Burton purports to demonstrate genuine disputes of material fact that require a trial.

After reviewing Burton's submissions, I conclude that she is not entitled to relief under Federal Rule of Civil Procedure 59(e). I will deny her motion for reconsideration.

BACKGROUND

I recounted the material facts of the case in my opinion on defendants' motion for summary judgment. Dkt. 90. Although Burton takes issue with some of the finer points, the basic facts have not changed. I will summarize those facts here, and I will discuss Burton's recently submitted materials in the analysis section of this opinion.

Burton began working in the criminal justice department at UWP in 2009, and she was promoted to associate professor in 2012. She later received tenure, effective for the 2013-14 academic year. The defendants in this case include the Board of Regents, Thomas Caywood (the former chair of Burton's department), Michael Dalecki (who replaced Caywood as chair of the department), and Elizabeth Throop (the dean of the college that included Burton's department).

The first of two critical events in this case occurred in October 2012. One of Burton's colleagues upset a student during a lecture on breach experiments. The student sought out Burton to talk about the incident, and Burton emailed Throop to alert her that the student had been harassed. In the following months, Burton experienced what she perceived to be unwarranted public criticism for the way that she had handled the student's complaint. According to Burton, Caywood was upset that she had taken the issue to the dean instead of him. Caywood became bitter toward Burton and was less than collegial on several occasions.

At the time that the student incident occurred, Burton was developing a new cybersecurity curriculum. In the course of developing the curriculum, Burton secured a grant from AT&T. But Throop and Caywood took issue with the press release that Burton had approved to announce the donation. In their opinion, the press release incorrectly reported the status of the new curriculum as more developed than it really was. Despite Throop and Caywood's concerns, AT&T was able to correct the press release in time to present Burton with a check at a public ceremony in January 2013. About the same time, Throop and Caywood also identified other issues with how Burton was portraying the status of the curriculum to the public. Burton contends that Throop and Caywood's criticisms and their sudden drop in support were in retaliation for Burton assisting the student.

The second critical event in this case occurred in August 2013, when Burton filed a charge of discrimination with the Wisconsin Department of Workforce Development—Equal Rights Division (ERD). Burton charged that: (1) Caywood had discriminated against her because she was a woman and retaliated against her for reporting the student harassment; (2) Throop and the human resources director had discriminated against her; (3) Throop had defamed her; and (4) the university had been deliberately indifferent to her grievances.

After Burton filed her charge with the ERD, she continued to experience what she perceived to be hostile treatment by her colleagues and supervisors. Dalecki—who had replaced Caywood as department chair by that point—repeatedly encouraged her to drop the charge, and he expressed disappointment or told Burton to "get over it" each time that she refused to do so. Dalecki also implied that Burton was hurting her future opportunities to pursue administrative positions at UWP by continuing with the charge and later lawsuit. Burton and Dalecki had several disagreements throughout the 2013-14 academic year. The

3

disagreements concerned committee appointments, personnel changes, issues with graduate students, and department management. Burton contends that Dalecki's actions were in retaliation for the ERD charge and this lawsuit.

Burton's relationship with Throop deteriorated as well. In October 2014, Throop wrote Burton a letter of direction, identifying seven events that Throop described as showing "a consistent pattern of unprofessional and inappropriate behavior." Dkt. 37-15, at 5. Burton responded to the letter by disagreeing with Throop's summary of the relevant facts and by flatly refusing to accept any of Throop's directions. Given Burton's refusal to cooperate, Throop filed a complaint with the chancellor on January 5, 2015, asking him to write Burton a formal letter of reprimand that would be placed in her personnel file.

Burton pursued several grievances to address her concerns with UWP administrators. When those efforts proved unsuccessful, Burton filed suit in this court. I granted defendants' motion summary judgment, which disposed of the entire case.


ANALYSIS

Burton moves for reconsideration of my summary judgment decision, pursuant to Rule 59(e). Dkt. 99. She contends that her corrections and additions to the materials that her former counsel submitted demonstrate disputes of material fact that require a trial.

"A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citations and internal quotation marks omitted). But Rule 59(e) is not "a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party

to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Because Burton does not identify a manifest error of law or fact, and because she does not present newly discovered evidence, Burton is not entitled to relief under Rule 59(e). And even if I were to reconsider my summary judgment decision based on the evidence that Burton now identifies, I would reach the same conclusions.

The first type of motion under Rule 59(e) requires the movant to show that a court committed a manifest error of law or fact. But "[a] 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citations and internal quotation marks omitted). Burton does not identify controlling precedent that I failed to apply.[1] Burton also does not argue that I misunderstood the facts of the case as defendants and her former counsel presented them. Thus, Burton is not actually contending that I committed a manifest error of law or fact. Instead, she catalogues additional evidence that was not presented at summary judgment and asks me to revisit my earlier decisions with this evidence in mind. *See* Dkt. 103, at 1 ("Please review my attached findings of facts, corrections to Defendants' Proposed Findings of Fact and my corrections to Plaintiff's Brief in Opposition to Summary Judgment."). The mere fact that Burton has additional evidence and arguments for me to consider does not mean that I committed a manifest error of law or fact in deciding defendants' motion for summary judgment.

---

[1] This court is within the Seventh Circuit, so I must adhere to decisions from that court of appeals. Many of the cases that Burton cites in her brief are from other circuits, and they are persuasive precedent only, not binding.

As for the second type of Rule 59(e) motion, Burton has not presented "newly discovered evidence." Despite the circumstances that led Burton to file her motion, none of the evidence that she presents is "new"—it was all available to her and to her attorneys when they opposed defendants' motion for summary judgment. "[M]otions under Rule 59(e) cannot be used to present evidence that could have been presented before judgment was entered." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Burton hired the attorneys who represented her in this case; they were not forced upon her. Those attorneys presented Burton's case on her behalf, and she cannot pursue relief under Rule 59(e) just because she disagrees with their strategic decisions. It is too late for that. "A party seeking to defeat a motion for summary judgment is required to wheel out all its artillery to defeat it. . . . Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Burton has not identified a manifest error of law or fact that I committed in granting defendants' motion for summary judgment, nor has she identified newly discovered evidence that changes the result in this case. I will therefore deny her motion for reconsideration.

Even if I were to review my summary judgment opinion in light of the evidence and arguments that Burton presents now, I would still conclude that defendants are entitled to judgment as a matter of law. Burton alleged two retaliation claims: one under Title IX of the Education Amendments of 1972, and one under Title VII of the Civil Rights Act of 1964. Both claims required Burton to prove the same elements. *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). To withstand summary judgment, Burton needed to adduce evidence that: (1) she engaged in protected activity; (2) defendants took an adverse

action against her; and (3) there was a causal connection between her protected activity and the adverse action. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014).

For Burton's Title IX claim, I assumed without deciding that Burton engaged in protected activity when she assisted the student who complained about harassment. Dkt. 90, at 13. But I concluded that Burton had failed to adduce evidence of a materially adverse action that defendants took against her. This element required Burton to demonstrate an action or series of actions "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011) (citations and internal quotation marks omitted). Burton identified two categories of materially adverse actions: (1) Caywood publically criticized her and was not collegial toward her; and (2) Caywood and Throop withdrew their support of her efforts to develop a cybercrime curriculum. I concluded that these actions did not qualify as materially adverse.

In moving for reconsideration, Burton contends that there were other instances of Caywood being rude or unfriendly toward her. *See* Dkt. 103, at 5-7.[2] For example, two days after the student incident occurred, Caywood did not reply to a morning greeting from Burton, and he gave her a stern look when he saw her later that day. On a different occasion, Caywood did not respond to an email from Burton informing him about a news crew coming to interview her. Throop later commented that Burton should have informed the college

---

[2] Burton does not identify record evidence to support most of her factual assertions. *See, e.g.*, Dkt. 102 (Burton's responses to defendants' proposed findings of fact) and Dkt. 103, at 5-22 (Burton's list of adverse actions that she suffered). This court requires parties to cite directly to record evidence to support their proposed findings of fact and their responses to an opponent's proposed findings of fact. Dkt. 9, at 12-15. Because Burton failed to comply with these procedures, I would likely disregard her factual assertions, which would further support my conclusion that she has failed to create a genuine dispute of material fact.

about the event. Caywood also wrote a harsh email to Burton (and cc'd Throop). The email came shortly after Burton had learned that her father was terminally ill. According to Burton, Caywood's timing was deliberate: he intended for Burton to receive the email during a troubling time (but Burton has only speculation to support this assertion).

At summary judgment, I concluded that Burton had adduced evidence of only "petty slights or minor annoyances that often take place at work and that all employees experience," which do not qualify as materially adverse actions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Burton's motion for reconsideration presents more of the same: Caywood was cold toward her and his reprimands were embarrassing. These are not adverse actions that give rise to a retaliation claim in federal court. *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) ("Absent some tangible job consequence accompanying [unfair or undeserved] reprimands, we decline to broaden the definition of adverse employment action to include them.").

Burton characterizes Throop and Caywood's responses to the AT&T press release as demonstrating a sudden withdrawal of support for the curriculum that she was developing. But Throop worked with an AT&T representative to promptly correct the issue with the press release, and Burton received the donation at a public ceremony. Moreover, Throop and Caywood encouraged Burton to continue developing the curriculum, but they urged her to comply with UWP's procedures for doing so. *See, e.g.*, Dkt. 53-4 and Dkt. 37-5, at 1. Their disapproval of the AT&T press release was not a materially adverse action.

For Burton's Title VII claim, I concluded that she had engaged in protected activity by filing a charge of discrimination. Dkt. 90, at 21. I also concluded that although Dalecki's pressure to drop the charge and lawsuit did not qualify as an adverse action, Throop's letter

of direction and formal complaint to the chancellor *did* qualify. But Burton still could not succeed on her Title VII claim because she had not adduced evidence of a causal connection between her protected activity and Throop's actions. Burton's motion for reconsideration challenges my conclusion that Dalecki's actions did not qualify as materially adverse and my conclusion that there was no evidence of a causal connection.

Burton had several disagreements with Dalecki, but I have already concluded that these did not qualify as materially adverse actions. In her motion for reconsideration, Burton identifies a few other petty slights that she endured. For example, Dalecki refused to put "Dr." in front of Burton's name on a list of department email addresses, and he "corrected and humiliated [her] in a department email for [her] response to a very devastating" evaluation of the department (Burton later apologized to Dalecki for the tone of that response). Dkt. 103, at 9, 11. These slights and personality conflicts do not qualify as materially adverse actions for purposes of a Title VII retaliation claim.

Burton's motion for reconsideration also recasts much of the evidence concerning Dalecki's threats after she filed a charge of discrimination and this lawsuit. But Burton did not dispute at summary judgment that these threats were empty: Dalecki never followed through on them. "[I]t is well established that unfulfilled threats that result in no material harm cannot be considered an adverse employment action under Title VII." *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1030 (7th Cir. 2004) (citing *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003)). Now, in moving for reconsideration, Burton adds a few factual allegations. Dalecki assigned a newly hired professor to manage one of Burton's projects, Dkt. 103, at 11, and he did not assign Burton to several search committees, *id.* at 15. From her submissions, I infer that Burton wanted these assignments. But Burton has not

explained how, or adduced evidence that, she was actually injured by not receiving them and how that injury would deter a reasonable employee from filing a charge of discrimination. At this point, Burton has not identified anything more than her own personal disappointment with Dalecki's decisions, which does not qualify as a materially adverse action.

This leaves Throop's letter of direction and formal disciplinary complaint. At summary judgment, I concluded that Burton had failed to adduce evidence of a causal connection between her protected activity and Throop's adverse actions. Burton sought to prove causation through pretext, by showing that Throop's reasons for disciplining her were so obviously false that they must have been a cover for retaliation. Burton takes the same approach in her motion for reconsideration. Dkt. 103, at 17 ("I believed Throop's accusations in the Letter of Direction to be false and in retaliation of a protected activity, or multiple protected activities. I have evidence to prove her accusations as false but I was never given a chance to present my side of the story.").

Federal courts "do not evaluate whether the stated reason [for an adverse action] was inaccurate or unfair." *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015) (citations and internal quotation marks omitted). Thus, Burton's belief that Throop's accusations were false is irrelevant. The issue is not whether Burton can prove that Throop was wrong to issue her a letter of direction. Instead, Burton must identify record evidence demonstrating that Throop did not honestly believe the reasons that she gave for disciplining Burton. In my summary judgment opinion, I concluded that Throop had at least some factual basis for her decisions because she cited to specific events in her letter of direction. Burton obviously disagrees with Throop's description of the underlying events and with how Throop responded to them. But a federal court is not the forum in which to present these types of

10

disputes. I will not second guess internal business and personnel decisions, absent some evidence that the employer's decision was "completely unreasonable." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 646 (7th Cir. 2013). Burton failed to meet this standard at summary judgment, and her recent submissions do not change that.

## CONCLUSION

Burton does not contend that I committed a manifest error of law or fact, and she does not present newly discovered evidence that would change my earlier decisions. Burton simply disagrees with the way in which her former counsel presented this case. But this is not a proper reason for seeking reconsideration under Rule 59(e). I must therefore deny her motion. And even if I were to consider the evidence that Burton discusses in her recent submissions, I would still conclude that defendants are entitled to judgment as a matter of law on Burton's retaliation claims.

## ORDER

IT IS ORDERED that plaintiff Sabina Burton's motion for reconsideration, Dkt. 99, is DENIED.

Entered June 21, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

11